### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| **AMBER BLACK** and **TABITHA SMITH**, individually and on behalf of all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> **C3/CUSTOMERCONTACTCHANNELS, INC.** and **C3/CUSTOMERCONTACT CHANNELS HOLDINGS, INC.,** <br> Defendants. | Case No.: |

### COMPLAINT – CLASS/COLLECTIVE ACTION

Plaintiffs Amber Black and Tabitha Smith ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Class/Collective Action Complaint against Defendants C3/CustomerContactChannels, Inc. and C3/CustomerContact Channels Holdings, Inc. ("Defendants" or "C3"), and states as follows:

### INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; and the Arizona Wage Act ("AWA"), A.R.S § 23-350, *et seq.*

2.     Defendants operate a number of call centers, across the country, were they employed hourly customer service representatives.  Defendants failed to provide these employees their full compensation, over the past three years, by failing to pay their employees

for the preliminary work completed before their shift, failing to provide their employees paid rest periods, forcing employees to work during their unpaid meal periods, and systematically denying their employees overtime compensation.

3.      Accordingly, Plaintiffs seek an award of unpaid wages, liquidated and statutory damages, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

5.      Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

6.      Defendants' annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's CSRs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as their federal claims.

8.      This Court has personal jurisdiction over Defendants because Defendant's headquarters are in this district and Defendants reside in this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside in this district, and a substantial portion of the decisions and policy-making

that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

10.     Plaintiff Amber Black is a resident of Arizona and was employed by Defendants as an hourly customer service representatives at the Defendants' call center in Tucson, Arizona. She has been employed as a customer service representatives by Defendants from 2015 to 2017 and, again, 2018 - 2019.  Plaintiff Black signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit A***.

11.     Plaintiff Tabitha Smith is a resident of Nevada and was employed by Defendants as an hourly customer service representatives at the Defendants' call center in Tucson, Arizona. She has been employed as a customer service representatives by Defendants from 2015 to 2017 and, again, 2018 - 2019.  Plaintiff Smith signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit B***.

12.     Defendants          C3/CustomerContactChannels,          Inc.          and C3/CustomerContactChannels Holdings, Inc. are each a Florida Profit Corporation, headquartered in Austin, Texas.  Defendant's principal mailing address is 13011 McCallen Pass, Building A, Suite 210, Austin, Texas.

13.     Defendants is are a fully owned subsidiaries of Everise Holdings PTE. LTD., a Singapore based Limited Liability Company.

## GENERAL ALLEGATIONS

**Pre-Shift Off-the-Clock Work**

14.     Defendants are a Texas based customer-relationship management company which provides call center support for various companies across the country.  Defendants operate multiple call centers in the United States, including in Austin, Texas; Las Vegas, Nevada;

McGregor, Texas; Salt Lake City, Utah; Tahlequah, Oklahoma; Tucson, Arizona; and Twin Falls Idaho.   Additionally, Defendants also employ work-for-home teams in states, such as Florida. Collectively, Defendants employ more than 7,000 employees in North America.

15.     In order to service their customers, Defendants employ hourly customer service representatives at call centers throughout the country.   These customer service representatives all perform essentially the same tasks, regardless of which call center they are employed in or if they work from home.

16.     Defendants employed each of the Plaintiffs, and other customer service representatives, during the past three (3) years at their brick-and-mortar call center in Tucson, Arizona.   The Tucson, Arizona call center follow the same company wide policies and employment practices utilized by the entire company.

17.     Defendants require their customer service representatives to work a set, full-time schedule.  However, Defendants did not begin compensating customer service representatives until they have started up their computers and logged into all of the necessary computer applications. This policy results in customer service representatives not being paid for all time worked and for all of their overtime compensation in violation of the FLSA and the AWA.

18.     Defendants' customer service representatives use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at the call centers.  These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

19.     At the beginning of their shift, Defendants' customer service representatives are required to login to several programs, such as Knowledge Center, the WHC and client web portals, various Microsoft office programs, and others before they could log into their ADP

based time keeping system.  The customer service representatives engage in seven (7) to thirteen (13) minutes of pre-shift off-the-clock work booting up their computers and logging into Defendants' time keeping system.  This process can often take even longer, particularly, if the CSR experiences technical difficulties with the computer systems, which would happen as often as once a week and could delay the clock-in process by over an hour.

20.     Defendants' customer service representatives were required to waiting during this login process, and could not use this time for their own purposes.  Even when there are technical difficulties with the computer systems, which lasted over an hour, Defendants' customer service representatives were not completely relieved from duty, and were expected to stay on premise or near their computer, so they could begin their calls immediately after the technical difficulties was resolved.

21.     Defendants' customer service representatives were expected to be prepared to take calls at the beginning of their scheduled shift.  Accordingly, Defendants' customer service representatives often had to arrive fifteen minutes early to complete the login process and above disciplinary action.  But Defendants did not compensate their customer service representatives for this time, despite their employees being force to be on premise and/or preparing to work during this time.

22.     Defendants drafted and were aware of these policies and purposely required their customer service representatives engage in preliminary compensable work before clocking into their time-keeping system. Such actions were done knowingly and purposefully to limit staffing budgets and increase their profits.

23.     Defendants' customer service representatives working onsite at the call centers and from home perform the same basic job duties and are required to use the same computer

programs, software programs, servers, and applications.   Accordingly, all of Defendants'
customer service representatives are equally aggrieved by Defendants' uniform policy of failure
to pay its employees for preliminary time worked.

**Improperly Paid Over Time Work**

24.     Defendants also required that their customer service representatives work
mandatory overtime, often seven (7) hours or more of overtime per workweek.  These additional
work requirements caused Defendants' customer service representatives work in excess of forty
(40) hours in a given workweek.

25.     Defendants sometimes would not compensate employees for this time at all, but if
they were compensated, it was not at the legally required premium rate.  Whether under federal
or state law, Defendants must pay overtime pay for hours worked over 40 in a workweek at a
rate not less than time and one-half times their employees' regular rates of pay.

26.     Defendants were aware of their deficient compensation practices.   Indeed,
Plaintiffs would often complain to Defendants' Human Resource representatives regarding the
lack of overtime premium pay.  These inquires and complaints were heard by Defendants'
representatives, but no corrective action was taken.  Accordingly, knowingly and purposefully
underpaid their customer service representatives for their own benefit, and at the costs of their
employees' wages.

**Mid-Shift (Lunch) Off-the-Clock Work**

27.     Defendants provided and authorized their customer service representatives to take
a one-half hour unpaid lunch during the standard eight (8) shifts.  While a *bona fide* meal period
is not worktime, which must be compensated, an employee must be completely relieved from
duty for the purposes of eating regular meals.  An employee is not relieved if he or she is

required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his or her desk or a factory worker who is required to be at his or her machine is working while eating.

28.     During their lunch, Defendants' customer service representatives would interrupt these meal periods with additional work, without compensating their customer service representatives.     For example, Defendants often required that their customer service representatives use these meal periods to work on their required call documentation.

29.     Defendants' customer service representatives would also have their unpaid meal period encroached by the required computer login process referenced above.   Accordingly, Defendants' customer service representatives were not fully compensated for their time worked during their unpaid meal periods, and did not receive the benefit of their meal periods.

**Unpaid Rest Periods**

30.     In addition, Defendants' customer service representatives took periodic short rest periods each workday for personal tasks, such as using the restroom.  These rest periods would last less than 20 minutes.

31.     Defendants are required to count these rest periods as hours worked and compensate this time at the appropriate hourly rate.  Defendants, however, would require their employees to clock out during these rest periods.

## COLLECTIVE ACTION ALLEGATIONS

32.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendants at any call center in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members").  Plaintiffs reserve the right to amend this definition as necessary.

33.     Plaintiffs' FLSA claim should proceed as a collective action because Plaintiffs and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

34.      Plaintiffs and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

35.     The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend in connection with performing pre-shift and lunch break activities is compensable under the FLSA.  Also, whether Defendant failed to pay the proper overtime premiums and pay the appropriate wages during rest periods.

36.     Plaintiffs estimate that the putative collective members, including both current and former employees over the relevant period, will include several thousand members. The precise number of putative collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 ARIZONA CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Arizona at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Arizona Class"). Plaintiffs reserve the right to amend this definition as necessary.

38.     The members of the Rule 23 Arizona Class are so numerous that joinder of all Rule 23 Arizona Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Arizona Class members. Rule 23 Arizona Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

39.     There is a well-defined community of interest among Rule 23 Arizona members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Arizona Class. These common legal and factual questions, include, but are not limited to, the following:

    a.     Whether Rule 23 Arizona Class members were entitled to one and
           half times their regular rate for all hours worked in excess of 40
           hours in a workweek.

    b.     Whether the pre-shift time that Rule 23 Arizona Class members
           spend on start-up/log-in activities prior to "clocking in" for each
           shift is compensable time;

    c.     Whether the time that Rule 23 Arizona Class members spend on
           work activities during their lunch break, such as logging back into
           computer systems and clocking in, is compensable time;

    d.     Whether the time that Rule 23 Arizona Class members spend
           during rest breaks, lasting less the 20 minutes, was compensable
           time.

40.     Plaintiffs' claims are typical of those of the Rule 23 Arizona Class in that they and all other Rule 23 Arizona Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23

9

Arizona Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Arizona Class members.

41.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Arizona Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Arizona Class.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Arizona Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

43.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

44.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Arizona Class and declaratory relief is appropriate in this case with respect to the Rule 23 Arizona Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (Alleging Violations of the Fair Labor Standards Act,
### 29 U.S.C. § 201, *et seq.*)

45.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further

allege as follows.

46.     At all times relevant to this action, Defendants were Plaintiffs' employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

47.     Defendants engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

48.     At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

49.     Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

50.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

51.     At all times relevant to this action, Defendants required Plaintiffs and all similarly situated current and former Class members to perform pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

52.     At all times relevant to this action, Defendants failed to compensate Plaintiffs and all similarly situated current and former Class members overtime premium pay for hours worked in excess of forty (40) hours in a week.

53.     At all times relevant to this action, Defendants failed to compensate Plaintiffs and all similarly situated current and former Class members for work activities they performed during their lunch breaks.

11

54. At all times relevant to this action, Defendants failed to compensate Plaintiffs and all similarly situated current and former Class members during their rest breaks.

55. The off-the-clock work performed by Plaintiffs and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

56. In workweeks where Plaintiffs and other Class members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

57. Defendant failed to properly calculate the regular hourly rate for Plaintiffs and other Class members by not including non-discretionary bonuses and commissions in the calculation of their overtime rates.

58. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for their CSRs to perform the off-the-clock pre-shift and lunch break activities, and Defendant could have properly compensated Plaintiffs and the Class for the work they performed, but did not.

59. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Alleging Violations of the Arizona Wage Act, A.R.S § 23-350, *et seq*.)

60. Plaintiffs re-allege and incorporate all previous paragraphs herein.

61. Plaintiffs and members of the proposed Arizona Rule 23 Class are current and former employees of Defendants within the meaning of A.R.S. § 23- 350(2).

62.     Defendants at all relevant times Defendants were employers within the meaning of A.R.S. § 23-350(3).

63.     Defendants were required by agreement to pay Plaintiffs and the proposed Arizona Rule 23 Class for all hours worked.

64.     A.R.S. § 23-351 requires every employer to pay "all wages due" every pay period including overtime pay.

65.     A.R.S. § 23-353 provides that when an employer discharges an employee or employee quits, the employer must pay the employee all wages due in a timely manner.

66.     Wages are defined as "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid . . . ." A.R.S. § 23-350(6).

67.     Defendants, pursuant to their policies and illegal compensation practices, refused and failed to pay Plaintiffs and the proposed Arizona Rule 23 Class for all of their hours worked, in breach of Defendants' contractual and legal obligations.

68.     By failing to properly compensate Plaintiffs and the proposed Arizona Rule 23 Class for all "labor or services rendered" for which Plaintiffs and members of the proposed Arizona Rule 23 Class had a reasonable expectation of being paid, Defendant violated, and continues to violate, CCAs' statutory rights under A.R.S. §§ 23-351 and 23-353.

69.     Defendants' actions were willful, unreasonable, and done in bad faith as Defendants were aware that they were not fully compensating their employees proper, and chose not to take corrective action even after complaints.  A.R.S. §§ 23-352(3), 23-355.

70.     Plaintiffs and the proposed Arizona Rule 23 Class seek damages in the amount of their unpaid straight-time and overtime wages for all hours worked, treble damages, reasonable

attorneys' fees and costs for this action, pre- and post-judgment interest, and such other legal and

equitable relief as the Court deems proper.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief:

a.     An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     An Order certifying this case as a class action (for the Rule 23 Arizona Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' Arizona state law claims (Count II);

c.     An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.     An Order designating Plaintiffs as the representatives of the FLSA collective, the Rule 23 Arizona Class, and undersigned counsel as Class counsel for the same;

e.     An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.     An Order declaring Defendant violated the AWA by failing to properly pay the Rule 23 Arizona Class all wages earned and overtime premiums, as cited herein;

g.     An Order declaring Defendant's violation of the FLSA and AWA was willful;

h.     A Judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective and the Rule 23 Arizona Class the full amount of damages and liquidated damages available by law;

i.     An award of reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j.     An award of pre- and post-judgment interest to Plaintiffs on these

damages; and

k.      An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs demand a jury trial.

*/s/ Derek Hilley*

DEREK HILLEY
Bar No. 24056770
Hilley & Solis Law, PLLC
6243 IH-10 W
SUITE 503
SAN ANTONIO, TX  78201
TELEPHONE: (210) 446-5000
FACSIMILE: (210) 446-5000
dhilley@hilley-solis.com

*/s/ Carlos Soils*

Carlos Solis
Bar No. 24056770
Hilley & Solis Law, PLLC
6243 IH-10 W
SUITE 503
SAN ANTONIO, TX  78201
TELEPHONE: (210) 446-5000
FACSIMILE: (210) 446-5000
dhilley@hilley-solis.com

*/s/ Thomas Joseph McHugh*

THOMAS JOSEPH MCHUGH
**The Law Offices of Thomas J. McHugh, PLLC**
6243 IH-10 W
SUITE 503
SAN ANTONIO, TX  78201
TELEPHONE: (210) 227-4662
FACSIMILE: (210) 227-1501
STATE BAR NO. 13675000
thomasjmchughlaw@gmail.com

Trenton R. Kashima, Esq. (Pro hac vice pending)
SOMMERS SCHWARTZ, P.C.
402 West Broadway, Suite 1760
San Diego, California 92101
Ph: (619) 762-2125
tkashima@sommerspc.com

Kevin J. Stoops, Esq. (Pro hac vice pending)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Ph: (248) 355-0300
kstoops@sommerspc.com

*Counsel for Plaintiffs*